**James BEVERLY, Petitioner–Appellant,**

v.

**Hans WALKER, Superintendent of Auburn Correctional Facility, Respondent–Appellee.**

No. 1487, Docket 95–2620.

United States Court of Appeals, Second Circuit.

Argued May 29, 1997.

Decided June 30, 1997.

Sally Wasserman, New York City, for Petitioner–Appellant.

Martin A. Hotvet, Assistant Attorney General, Albany, NY (Dennis C. Vacco, Attorney General, Peter H. Schiff, Deputy Solicitor General, Peter G. Crary, Assistant Attorney General, Albany, NY, of counsel), for Respondent–Appellee.

Before: VAN GRAAFEILAND, MINER and CABRANES, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

James Beverly appeals from a judgment of the United States District Court for the Northern District of New York (Scullin, J.) dismissing his petition for a writ of habeas corpus based in part on a state court's jury instructions concerning reasonable doubt. Finding no constitutional error in the instructions, we affirm.

On October 22, 1985, following a jury trial in Onondaga County Court, Beverly was convicted on six counts of selling a controlled substance. He was sentenced as a predicate felon to six concurrent terms of incarceration of 12 1/2 to 25 years. The Appellate Division, Fourth Department, affirmed the conviction and sentence. 148 A.D.2d 922, 539 N.Y.S.2d 161 (1989). It held that "[t]he court's charge on reasonable doubt, when read in its entirety, was not erroneous." *Id.* The Court of Appeals denied leave to appeal.

74 N.Y.2d 661, 543 N.Y.S.2d 404, 541 N.E.2d 433 (1989).

In 1992, Beverly filed *pro se* the instant petition for a writ of habeas corpus. Although he raised 55 separate issues, we are concerned here only with his challenge to the trial court's charge on reasonable doubt, which included the following language:

Reasonable doubt must be based entirely and absolutely upon some good sound substantial reason without appeal to prejudice, or sympathy, or to the imagination. A juror who has a reasonable doubt and asserts it ought to first be able to give that reasonable doubt a reason for it to himself, and he should be able to communicate that to his fellow jurors that reasonable doubt in the event they ask him to do so.

.... It is not the duty of the People or the prosecution in a criminal case to establish the guilt of a defendant beyond all possible or imaginary doubt or to a mathamatical [sic] certainty. This degree of proof cannot be had in human affairs.... It is possible, however, to establish the guilt of defendant to a reasonable degree of certainty. In that degree of proof the People must be held and are held under the law.

Jury Charge at 380–81.

The habeas petition was referred to Magistrate Judge DiBianco for a report and recommendation. He concluded that "[t]he trial court ... provided adequate reasonable doubt instructions by repeatedly explaining that the prosecution had to prove its case beyond a reasonable doubt," and recommended dismissal of the petition. Although Beverly did not file objections to the report and recommendation, Judge Scullin nonetheless addressed petitioner's asserted grounds for relief. In a decision reported at 899 F.Supp. 900 (1995), Judge Scullin concluded that "[t]he trial court properly instructed the jury on the presumption of innocence ... and reasonable doubt." *Id.* at 914. Judge Scullin dismissed the petition and declined to issue a certificate of probable cause. By order filed November 14, 1996, this Court granted a certificate of appealability limited to the issue of "whether the district court

erred by denying a writ of habeas corpus on the ground that the reasonable doubt jury instructions given at appellant's trial deprived him of due process." We assigned counsel to process the appeal.

## DISCUSSION

Before. addressing the merits of Beverly's appeal, we discuss the State's argument that Beverly failed to preserve his right of review (1) by not objecting to the instructions at trial and (2) by not filing objections to the magistrate judge's report and recommendation.

■ Beverly's failure to make contemporaneous objections to the challenged instructions does not act as a procedural bar because the Appellate Division ruled on the merits of his challenge without commenting on the apparent default. *See Rosenfeld v. Dunham,* 820 F.2d 52, 54 (2d Cir.) ("[I]f the state appellate court excuses the procedural failure and considers the merits, then a federal court must also consider the merits of petitioner's challenge when ruling on the availability of federal habeas relief."), *cert. denied,* 484 U.S. 968, 108 S.Ct. 463, 98 L.Ed.2d 402 (1987).

■ A *pro se* litigant's failure to object to a magistrate judge's report and recommendation precludes appellate review where the report explicitly warns of the consequences of such a failure. *See Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989). Although the State contends that Magistrate Judge DiBianco's report and recommendation did contain such a warning, Beverly's counsel asserted at oral argument that the report did not reach her incarcerated client in time for him to make a proper objection. The State's attorney conceded at oral argument that its waiver argument would be inappropriate if Beverly did not receive the report within the ten days allowed for objection. However, we need not resolve this issue since we hold that the reasonable doubt charge, taken as a whole, did not deprive Beverly of his constitutional rights.

■ It is well settled that due process requires the government to prove each element of a criminal offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). Although the Constitution neither compels nor prohibits the defining of the term "reasonable doubt," any attempt to define it " 'must correctly convey the concept of reasonable doubt to the jury.' " *Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994) (quoting *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954)) (alterations omitted). As recent cases in this Circuit have demonstrated, however, the term is "perhaps one of the least susceptible to verbal formulation." *United States v. Birbal,* 62 F.3d 456, 457 (2d Cir.1995); *see, e.g., Vargas v. Keane,* 86 F.3d 1273, 1280 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996); *Chalmers v. Mitchell,* 73 F.3d 1262, 1266 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 106, 136 L.Ed.2d 60 (1996). It has been suggested that trial courts either stick to tried and true pattern jury instructions defining reasonable doubt, *Vargas,* 86 F.3d at 1280, or not define the term at all, *see id.* at 1283 (Weinstein, J., concurring) (" 'The phrase "reasonable doubt" is self-explanatory and is its own best definition. Further elaboration "tends to misleading refinements" which weaken and make imprecise the existing phrase.' ") (quoting 1 *Federal Criminal Jury Instructions of the Seventh Circuit* § 2.07, Committee Comments (1980)).

■ However, whether in the exercise of our supervisory authority we should suggest a rule requiring a bare-bones charge is a question not presently before us, since our review on habeas is limited to determining whether the instant charge was constitutionally infirm. *See Vargas,* 86 F.3d at 1280 ("[W]e are mindful that the challenge to the trial court's instruction arises on habeas review, and our inquiry is whether the instruction is constitutional, not whether it is exemplary."). In making this determination, our task is to decide not simply whether the challenged instructions, standing alone, are erroneous or misleading, but rather whether it is "reasonably likely" that the jury applied

the wrong standard. *Victor,* 511 U.S. at 16, 114 S.Ct. at 1248; *Vargas,* 86 F.3d at 1277; *Chalmers,* 73 F.3d at 1267 ("Sometimes, erroneous portions of the jury instructions are offset when considered in context or explained by the trial court in later sections of the instruction."). If we conclude that the jury applied the wrong standard, then the conviction may not stand, because harmless error analysis does not apply to a deficient reasonable doubt charge. *Sullivan v. Louisiana,* 508 U.S. 275, 280, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993); *Vargas,* 86 F.3d at 1277 ("[A] constitutional infirmity in a reasonable doubt instruction is a *per se* ground for reversal of a criminal conviction. . . .").

■ We examine first Beverly's contention that the trial court unconstitutionally shifted the burden of proof to him by charging that "[a] juror who has a reasonable doubt and asserts it ought to first be able to give that reasonable doubt a reason for it to himself, and he should be able to communicate that to his fellow jurors that reasonable doubt in the event they ask him to do so." We recently have noted that charges which state or imply that a juror ought to be able to "articulate" or "give" a reason for acquittals present dangers of shifting burdens of proof because the jury may look to the defendant to supply that reason. In *Vargas,* 86 F.3d at 1278–79, for example, we disapproved of a definition of reasonable doubt as "doubt for which you can give a reason if called upon to do so by a fellow juror." However, we declined to grant habeas relief because the trial court made clear throughout the charge that the burden of proof remained at all times on the prosecution. *Id.; see also Chalmers,* 73 F.3d at 1268 (criticizing charge that defined reasonable doubt as "a doubt for which some good reason can be given," but concluding that it was not reasonably likely the jury misunderstood which party bore the burden of proof, since the court made it clear that defendant remained innocent until the prosecution proved his guilt beyond a reasonable doubt). Similarly, the trial court in the instant case repeatedly instructed the jury that the defendant was presumed innocent and that the prosecution had the burden of proving the defendant guilty. *See, e.g.,* Jury Charge at

378–79 (Instructing jury that "[t]he defendant is presumed to be innocent until his guilt is proven beyond a reasonable doubt"; that "[t]he defendant is never required to prove his innocence"; and that "[t]he burden of proving his guilt rests upon the prosecution throughout the case. It never shifts from the prosecution."). In light of these admonitions, we conclude that it was not reasonably likely that the jury was misled as to which party bore the burden of proof.

■ Beverly also challenges the court's instruction that "[r]easonable doubt must be based entirely and absolutely upon some good sound substantial reason." He argues that this impermissibly raised the quantum of doubt necessary to acquit and thereby lowered the State's constitutionally imposed burden of proof. As noted above, we upheld in *Chalmers* a charge that defined reasonable doubt as "a doubt for which some good reason can be given," because the word "good," when read in context, "was intended to mean doubt based on the existence or non-existence of evidence, as opposed to based on conjecture or imagination." 73 F.3d at 1268. Beverly argues that the trial court here raised the reasonable doubt threshold even higher by instructing the jury that a finding of reasonable doubt be based not only on a "good" reason, but a "sound" and "substantial" one as well. He contends that the use of the mandatory "must" exacerbated this error because it precluded the jury from acquitting him absent this impermissibly high level of doubt.

We note that the trial court's instruction appears to be a variation of New York's pattern jury instructions, which define reasonable doubt in part as "a doubt for which some reason can be given." 1 *Criminal Jury Instructions New York* § 6.20 (1983); *see Vargas,* 86 F.3d at 1277. Unfortunately, as is too often the case, the trial court did not adhere to the pattern instructions, but instead delivered a version (one might say a perversion) that was more confusing than elucidating. Indeed, the Appellate Division, subsequent to Beverly's direct appeal, re-

versed a trio of cases from the same trial judge based in part on misleading reasonable doubt instructions strikingly similar to those given here. *See People v. Towndrow,* 187 A.D.2d 194, 195–96, 594 N.Y.S.2d 469 (4th Dep't) (per curiam) ("In each of the cases before us, the court instructed the jury that reasonable doubt must be 'based upon some good sound substantial reason.' We have condemned that formulation repeatedly, in language that leaves no doubt about its impropriety [citing cases]. We point out that almost all of the foregoing decisions reviewed trials conducted by the same Trial Judge."), *leave to appeal dismissed,* 81 N.Y.2d 1021, 600 N.Y.S.2d 209, 616 N.E.2d 866 (1993).

Nevertheless, although the "good sound substantial" language should not be used, and we applaud the Appellate Division for condemning it in the exercise of its supervisory authority, we cannot conclude that the entire charge was constitutionally deficient. It is not reasonably likely that the jury understood these words to describe the quantity of doubt necessary for acquittal, rather than as a contrast to doubt based on impermissible criteria such as conjecture or speculation. This is made clear by reading the entire sentence in which the offending clause appears: "Reasonable doubt must be based entirely and absolutely upon some good sound substantial reason *without appeal to prejudice, or sympathy, or to the imagination.*" The court developed this distinction further when it explained that:

> Reasonable doubt is not a mere speculative or imaginary doubt. You must stay within the confines of the evidence that was presented to you during the course of the trial. You do not pick a reasonable doubt out of thin air. It is also not a subterfuge to which a juror may resort in order to avoid doing a disagreeable thing.

*Jury Charge* at 381. *See Victor,* 511 U.S. at 18, 20, 114 S.Ct. at 1249 (charge that defined reasonable doubt as "an actual and substantial doubt arising from the evidence" did not raise quantum of proof necessary to acquit because these terms were used to distinguish between "a substantial doubt and a fanciful conjecture"). In short, the challenged instruction "was intended, and likely understood, to mean that the proper foundation of a reasonable doubt was in fact rather than fantasy." *Chalmers,* 73 F.3d at 1268.

■ Finally, Beverly contends that the court lowered the burden of proof when it instructed the jury that the prosecution's burden was to establish the defendant's guilt "to a reasonable degree of certainty." The phrase "reasonable certainty" has been denounced by New York intermediate appellate courts, *see, e.g., People v. Morris,* 100 A.D.2d 600, 601, 473 N.Y.S.2d 550 (2d Dep't 1984); *People v. Forest,* 50 A.D.2d 260, 262, 377 N.Y.S.2d 492 (1st Dep't 1975), and we agree with Beverly that the language is misleading. However, this error did not render the entire charge constitutionally deficient. The trial court made it abundantly clear that the governing standard was one of reasonable doubt. Moreover, the phrase "reasonable degree of certainty," when read in the context of the surrounding language, was used to illuminate the correct point that the prosecution was not required to prove the defendant's guilt "beyond all possible or imaginary doubt or to a mathamatical [sic] certainty." Mindful that "not every unhelpful, unwise, or even erroneous formulation of the concept of reasonable doubt in a jury charge renders the instruction constitutionally deficient," *Vargas,* 86 F.3d at 1277, we are satisfied that this error did not cause the jury to apply the wrong standard.

The judgment of the district court is hereby AFFIRMED.