IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 95-31101

---

ELMO HUMPHREY, III,

Petitioner-Appellant,

v.

BURL CAIN, Acting Warden,
Louisiana State Penitentiary,

Respondent-Appellee.

---

Appeal from the United States District Court
For the Eastern District of Louisiana

---

August 14, 1997

Before HIGGINBOTHAM, SMITH, and BARKSDALE, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This is a federal habeas petition seeking relief from a state court conviction for aggravated rape. Elmo Humphrey, III, had no criminal record but found himself accused of rape by a troubled sixteen-year-old girl. The rapes allegedly took place more than five years earlier. The victim had retracted an earlier accusation against Humphrey and had no witnesses or medical testimony to support her story. Nevertheless, a Louisiana jury convicted Humphrey by a vote of 11 to 1.

We conclude that the reasonable doubt instruction did not give the defendant the benefit of reasonable doubt as elucidated by the Supreme Court in In Re Winship, 397 U.S. 358, 90 S. Ct. 1068, 25

L. Ed. 2d 368 (1970), <u>Cage v. Louisiana</u>, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990) (per curiam), and <u>Victor v. Nebraska</u>, 511 U.S. 1, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994). Circuit precedent, however, requires us to hold that Humphrey's claim rests on a new rule and thus is unavailable in a habeas proceeding.

                                    I.

Petitioner Elmo Humphrey was a friend of Kathy Calhoun when she lived in Metairie, Louisiana. Starting in early 1980, Calhoun engaged Humphrey to baby-sit her nine-year-old daughter J. and J.'s brother. Humphrey looked after the children regularly while the Calhouns lived in Metairie and on one occasion after the family moved. The trial evidence regarding the date of this move is equivocal, but the jury could have concluded that the family moved from Metairie in March of 1982. In 1987, J., then sixteen, told her mother about sexual encounters with Humphrey. Calhoun informed the police. On January 21, 1988, a Louisiana grand jury indicted Humphrey for aggravated rapes occurring between January 1, 1980, and December 31, 1984.

The trial judge gave the following instruction to the jury:

> If you entertain any reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your sworn duty to give him the benefit of that doubt and return a verdict of acquittal. Even where the evidence demonstrates a probability of guilt, yet if it does not establish it beyond a reasonable doubt, you must acquit the accused. This doubt must be a reasonable one, that is, one founded upon a real, tangible, substantial basis, and not upon mere caprice, fancy or conjecture. It must be such a doubt as would give rise to a grave uncertainty, raised in your minds by reason of the unsatisfactory character of the evidence; one that would make you feel that you had not an abiding conviction to a moral certain[ty] of the

2

defendant's guilt. If, after giving a fair and impartial consideration to all of the facts in the case, you find the evidence unsatisfactory upon any single point indispensably necessary to constitute the defendant's guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty. The prosecution must establish guilt by legal and sufficient evidence beyond a reasonable doubt, but the rule does not go further and require a preponderance of testimony. It is incumbent upon the State to prove the offense charged, or legally included in the Information, to your satisfaction and beyond a reasonable doubt. A reasonable doubt is not a mere possible doubt. It should be an actual or substantial doubt. It is such a doubt as a reasonable man would seriously entertain. It is a serious doubt, for which you could give good reason.

The jury convicted Humphrey of the rape charges by an 11-1 vote. The trial judge sentenced him to life in prison at hard labor without parole. In his appeal, he argued that the reasonable doubt instruction given to his jury was deficient. State v. Humphrey, 544 So. 2d 1188 (La. Ct. App.), writ denied, 550 So. 2d 627 (La. 1989). Humphrey sought post-conviction relief in the Louisiana courts. He raised the reasonable doubt issue again and added a claim that he was prosecuted illegally because the statute of limitations had expired. The Louisiana courts denied relief. Humphrey then filed this federal habeas petition, which raises the same issues. The district court rejected both contentions, but it granted a certificate of probable cause, and we appointed counsel.

II.

The district court issued its certificate of probable cause on November 27, 1995. While this appeal was pending, the Anti-terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996), became effective. This statute amended 28

3

U.S.C. § 2253 to require a certificate of appealability, rather than a certificate of probable cause, before a final order in a habeas proceeding may be appealed. It also modified the circumstances in which federal courts may grant writs to state prisoners. See 28 U.S.C. § 2254(d) (West Supp. 1997).

Neither of these changes affects Humphrey's petition. We held in Brown v. Cain, 104 F.3d 744, 749 (5th Cir.), cert. denied, ___ U.S. ___, 117 S. Ct. 1489, 137 L. Ed. 2d 699 (1997), that the AEDPA's certificate-of-appealability requirements do not apply to a petitioner who obtained a certificate of probable cause before the new statute went into effect. And the Supreme Court recently held that, except in certain capital cases, the new version of section 2254(d) does not apply retroactively to petitions filed before the new statute's effective date. Lindh v. Murphy, ___ U.S. ___, 117 S. Ct. 2059, ___ L. Ed. 2d ___ (1997); Shute v. Texas, 117 F.3d 233, 235 (5th Cir. 1997) (on rehearing). Thus, we must analyze Humphrey's claims under the old version of the habeas statute.

III.

A.

Because it is a threshold question, see Caspari v. Bohlen, 510 U.S. 383, 389, 114 S. Ct. 948, 953, 127 L. Ed. 2d 236 (1994), we turn first to the question of whether Humphrey can rely on Cage and Victor, decided by the Supreme Court after his conviction became final. In Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), the Supreme Court narrowed the relief

4

available to a habeas petitioner under 28 U.S.C. § 2254 by confining a petitioner to rules of constitutional law in place when certiorari is denied on direct appeal of his conviction. But Teague did not withdraw two categories of newly announced rules. Subscribing to Justice Harlan's view of the central purposes of the writ of habeas corpus, Teague accepted two limitations on the general prohibition against looking to new law.

> First, a new rule should be applied retroactively if it places "certain primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." Mackey[v. United States], 401 U.S. [667,] 692 [(1971)]. Second, a new rule should be applied retroactively if it requires the observance of "those procedures that . . . are 'implicit in the concept of ordered liberty.'" Id. at 693 (quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937) (Cardozo, J.)).

489 U.S. at 307, 109 S. Ct. at 1073. Teague added to the limits of Justice Harlan's suggested withdrawal of federal habeas review of state convictions the requirement that the error must also implicate the accuracy of the fact determination; that it must "seriously diminish the likelihood of obtaining an accurate conviction." Id. at 1078. See also Sawyer v. Smith, 497 U.S. 227, 242, 110 S. Ct. 2822, 2831, 111 L. Ed. 2d 193 (1990) (explaining that a new rule within Teague's second exception must both implicate accuracy and alter "our understanding of the 'bedrock procedural elements' essential to the [fundamental] fairness of a proceeding").

In our view, the Supreme Court has made it plain that Cage-Victor errors fit with the second Teague exception. The Court in Sullivan v. Louisiana, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d

5

182 (1993), explained that denying the right to a jury verdict beyond a reasonable doubt is a structural defect.  Such an error takes away a "'basic protectio[n]' whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function."  Id. at 281, 113 S. Ct. at 2083.  In other words, a jury that purports to convict based on a constitutionally defective reasonable-doubt instruction has in fact not rendered any conviction at all.

 Other circuits have reached the same conclusion. According to the Eleventh Circuit, Sullivan and Cage, when taken together, indicate that "an improper reasonable doubt instruction undermines the fundamental fairness of every trial in which it is used." Nutter v. White, 39 F.3d 1154, 1158 (11th Cir. 1994) (emphasis in original).  The Fourth Circuit reached a different result in Adams v. Aiken, 965 F.2d 1306 (4th Cir. 1992), cert. denied, 508 U.S. 974, 113 S. Ct. 2966, 125 L. Ed. 2d 666 (1993), but after deciding Sullivan, the Supreme Court granted certiorari on rehearing and remanded for reconsideration.  511 U.S. 1001, 114 S. Ct. 1365, 128 L. Ed. 2d 42 (1994).  With the benefit of Sullivan's concept of structural error, the court of appeals decided that Cage-Victor errors fall within Teague's second exception.  Adams v. Aiken, 41 F.3d 175, 179 (4th Cir. 1994), cert. denied, 515 U.S. 1124, 115 S. Ct. 2281, 132 L. Ed. 2d 284 (1995).

 We need not fear that finding no Teague bar to claims such as Humphrey's will spawn scores of new habeas petitions.  Prisoners who file petitions after April 24, 1996, must surmount the

6

formidable barriers erected by the Anti-terrorism and Effective Death Penalty Act. Of course, we do not have occasion to measure how high those barriers might be. We note only that the one-year statute of limitations, see 28 U.S.C. § 2244(d) & 2255, the restrictions on successive petitions, see 28 U.S.C. § 2244(b) & 2255, and the heightened standard of review for state prisoners, see 28 U.S.C. § 2254(d)(1), could shut out future petitioners in Humphrey's situation.

Our circuit precedent, however, requires us to hold that Cage and Victor do not fall within an exception to Teague. The state directs our attention to Johanson v. Whitley, No. 94-30098 (5th Cir. 1994) (unpublished), cert. denied, 513 U.S. 1175, 115 S. Ct. 1155, 130 L. Ed. 2d 1112 (1995). Two other panels of this court recently cited an even earlier unpublished opinion holding that Cage-Victor analysis is not available on habeas review. United States v. Shunk, 113 F.3d 31, 37 (5th Cir. 1997); Brown v. Cain, 104 F.3d 744, 753 (5th Cir.), cert. denied, ___ U.S. ___, 117 S. Ct. 1489, 137 L. Ed. 2d 699 (1997) (both citing Smith v. Stalder, No. 93-3683 (5th Cir. 1994) (per curiam) (unpublished)).[1] These unpublished opinions were binding when filed, and absent relief from the court sitting en banc this panel must abide them.

---

[1] Panels of this court have declined to rest on Smith v. Stalder when a habeas petitioner would be unable to prevail on the merits in any case. See Schneider v. Day, 73 F.3d 610 (5th Cir. 1996) (per curiam); Weston v. Ieyoub, 69 F.3d 73 (5th Cir. 1995); Gaston v. Whitley, 67 F.3d 121 (5th Cir. 1995), cert. denied, ___ U.S. ___, 116 S. Ct. 2561, 135 L. Ed. 2d 1078 (1996) (all reaching the merits and denying relief based on Victor without explicitly holding that Cage-Victor errors are available retroactively).

7

5TH CIR. LOCAL R. 47.5.3 ("Unpublished opinions issued before January 1, 1996 are precedent."); Brown, 104 F.3d at 753 ("A panel is not at liberty to disagree with the decision of a prior panel."). In spite of our view that Sullivan makes Cage available retroactively, this panel may not grant Humphrey the relief he requests.

                                B.

Of course, en banc consideration of the availability of collateral attack on the reasonable-doubt instruction would be futile if Humphrey is destined to defeat on the merits. We believe that Humphrey's claim has merit. In other words, we believe that his trial involved a reversible Cage-type error. Because Humphrey must seek relief from the en banc court in any event, we examine the merits simply to show that his contention has force and that — in the absence of a Teague bar — the full court's attention will not be in vain.

Humphrey argues that the instructions given to the jury at his trial, when considered as a whole, were defective under Cage and Victor.[2] We must therefore look to see if the combination of phrases defining reasonable doubt — "grave uncertainty," "moral

---

[2] Humphrey has represented himself throughout the habeas process. He filed an appellate brief on January 11, 1996. Because this court opted to hear oral argument, we appointed counsel six months later and gave leave to file a supplemental brief on Humphrey's behalf. We are obliged to construe Humphrey's pro se brief liberally. See Guidroz v. Lynaugh, 852 F.2d 832, 834 (5th Cir. 1988). The later filing of a brief by appointed counsel does not alter this obligation. See Blankenship v. Estelle, 545 F.2d 510, 514 (5th Cir. 1977) (refusing to find waiver where appointed counsel filed a brief in federal district court that omitted grounds for habeas because the petitioner raised those grounds in state habeas proceedings and in his pro se application for habeas relief).

certainty," "actual or substantial doubt," and "a serious doubt, for which you could give good reason" — denied him a constitutional jury trial.

We examine the reasonable doubt instruction given here to determine "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the <u>Winship</u> standard." <u>Victor v. Nebraska</u>, 511 U.S. 1, 6, 114 S. Ct. 1239, 1243, 127 L. Ed. 2d 583 (1994). Humphrey's jury was instructed that it could acquit only if it had "a serious doubt, for which you could give good reason." As we will explain, this instruction, in tandem with the language of "moral certainty," "grave uncertainty," and "substantial doubt," denied the jury in Humphrey's case the guidance demanded by due process and required by <u>In re Winship</u>.

Courts have long struggled with the task of instructing juries regarding "reasonable doubt." Efforts often collapse into tautological restatements — such as that reasonable doubt is a doubt based on reason. This resistance to capture reflects the reality that reasonable doubt is the quintessential black box decision — a decision which demands the answer "yes or no," but in which we should not insist on an exhaustive explanation. "I just wasn't convinced" is a permissible response but may be difficult to support with articulable reasons.

To insist, as the trial judge did here, that the jury must find a "serious doubt for which you could give good reason" lightens the state's burden and removes a substantial protection

9

assured defendants. Faced with the uncertainties of conflicting testimony, and conscious of their awesome responsibility to guard justice, juries routinely scrutinize their instructions for help in sorting out the complexities presented by opposing counsel. A reasonable doubt instruction is not a technical nicety; for a jury, it is a basic proposition of its constitution. Undecided jurors may analyze their own doubts time after time in light of the instruction before settling on a decision. By the same token, jurors who have already made up their minds may recite the instruction time after time in order to bring undecided jury members over to their side. Insisting that a juror be able to articulate <u>a</u> reason is a troublesome step upon residual doubt. But our focus today is upon an instruction that went further. A juror favoring guilt would have a powerful tool if he could demand that undecided jurors articulate <u>good</u> reasons for considering an acquittal. Such a juror could use Humphrey's reasonable-doubt instruction to argue that it's not enough to have a reason to acquit — that one must have an especially strong, compelling, or persuasive reason for doubting the defendant's guilt. He could plausibly assert that a paucity of government evidence should not count as a "good" reason. Under this sort of pressure, inarticulate and undecided jurors are less likely to give defendants the benefit of their doubts. Requiring articulation of good reasons, then, skews the deliberation process in favor of the state by suggesting that those with doubts must perform certain

10

actions in the jury room — actions that many individuals find difficult or intimidating — before they may vote to acquit.

This cardinal vice in the charge might alone deprive a defendant of an essential element of his right to trial by jury in a criminal case — an issue we do not consider — for it surely does so in tandem with the use of "substantial doubt," "grave uncertainty," and "moral certainty," criticized by this court and the Supreme Court. See Victor, 511 U.S. at 19-22, 114 S. Ct. at 1250-51 (disapproving of the use of "moral certainty" and "substantial doubt"); Schneider v. Day, 73 F.3d 610, 612 (5th Cir. 1996) (same); Weston v. Ieyoub, 69 F.3d 73, 75 (5th Cir. 1995) (same); Gaston v. Whitley, 67 F.3d 121, 123 (5th Cir. 1995) (same), cert. denied, ___ U.S. ___, 116 S. Ct. 2561, 135 L. Ed. 2d 1078 (1996). In Victor, the Supreme Court returned to its earlier Cage decision and explained that not every use of these phrases in a reasonable doubt instruction is constitutional error. At the same time, the Court reaffirmed the principle of Cage and Winship that the charge must not allow the jury to convict unless it is convinced that the evidence demonstrates guilt beyond a reasonable doubt. It left no uncertainty that the inquiry continues to be "not whether the instruction 'could have' been applied in [an] unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it." 511 U.S. at 6, 114 S. Ct. at 1243 (emphasis in original) (citing Estelle v. McGuire, 502 U.S. 62, 72-73 & n.4, 112 S. Ct. 475, 482 & n.4, 116 L. Ed. 2d 385 (1991)). Here we have an effort to define reasonable doubt

11

with all the phrases that (although panned by the Court) survived constitutional attack in <u>Victor</u>, but they are coupled with an additional potent qualifier. Arguably, jurors were not allowed to entertain doubt without being able to express a <u>good</u> reason. The abiding conviction of guilt to a moral certainty could abide only if the juror could offer a good explanation.

Even before <u>Cage</u> was announced, a reasonable doubt instruction that required articulation of a good reason was of dubious constitutionality, standing alone and apart from its dissipating effect upon the context essential to the survival of the instruction in <u>Victor</u>. In <u>Dunn v. Perrin</u>, 570 F.2d 21, 23 (1st Cir.), <u>cert. denied</u>, 437 U.S. 910, 98 S. Ct. 3102, 57 L. Ed. 2d 1141 (1978), the First Circuit criticized an instruction that cast reasonable doubt as "doubt as for the existence of which a reasonable person can give or suggest a good and sufficient reason." While acknowledging that this error by itself might not merit reversal, the court stated that such an instruction "suggest[s] that a doubt based on reason was not enough to acquit, implicitly putting petitioners to the task of proving that the reason was 'good and sufficient.'" <u>Id.</u> (footnote omitted). In conjunction with the phrase "strong and abiding conviction," <u>id.</u> at 24, and authorization to convict even without verifiable information, <u>id.</u>, this instruction rose to a violation of due process.[3]

---

[3] In <u>Robinson v. Callahan</u>, 694 F.2d 6, 7 (1st Cir. 1982), the First Circuit, without providing any reasoning, held that an instruction describing reasonable doubt as doubt "for which you

12

It is true that the Second Circuit and other courts have refused to reverse convictions with articulation-demanding reasonable-doubt instructions. But none of these cases has faced the array of reasonable-doubt qualifiers contained in the charge to Humphrey's jury. In <u>Vargas v. Keene</u>, 86 F.3d 1273, 1277-79 (2d Cir.), <u>cert. denied</u>, ___ U.S. ___, 117 S. Ct. 240, 136 L. Ed. 2d 169 (1996), the Second Circuit held that an instruction survived due-process scrutiny in spite of its characterization of reasonable doubt as "doubt for which you can give a reason if called upon to do so by a fellow juror in the jury room." But the instruction apparently did not contain the other problematic phrases that appeared in Humphrey's jury charge. Significantly, it did not require jurors to be able to articulate a "good" reason. The court concluded that the entirety of the instruction did not eliminate the jurors' authorization to acquit based on residual doubt. "Viewed in context, the challenged language simply does not suggest that a doubt formulated within one's own mind — reasonable, but not articulable — is insufficient for acquittal." <u>Id.</u> at 1278.

---

could give <u>a</u> reason" (emphasis supplied) was not constitutional error. <u>Robinson</u> relied on an earlier opinion, <u>Tsoumas v. State</u>, 611 F.2d 412 (1st Cir. 1980). But <u>Tsoumas</u> examined language quite different: "It is not a frivolous or fanciful doubt, nor is it one that can easily be explained away." <u>Id.</u> at 412. In fact, <u>Tsoumas</u> explicitly <u>upheld</u> the reasoning of <u>Dunn</u>, which, as noted, cut the other way. It is unclear what, if anything, <u>Robinson</u> stands for today. <u>See also</u> <u>Gilday v. Callahan</u>, 59 F.3d 257, 261 (1st Cir. 1995) (approving an instruction that "a reasonable doubt is an uncertainty 'based upon a reason'" without mentioning <u>Dunn</u>, <u>Tsoumas</u>, or <u>Robinson</u>), <u>cert. denied</u>, ___ U.S. ___, 116 S. Ct. 1269, 134 L. Ed. 2d 216 (1996).

13

The Vargas court relied in part on another post-Cage Second Circuit case that approved a similar instruction. The court in Chalmers v. Mitchell, 73 F.3d 1262, 1268-69 (2d Cir.), cert. denied, ___ U.S. ___, 117 S. Ct. 106, 136 L. Ed. 2d 60 (1996), approved an instruction that defined a reasonable doubt as "a doubt for which some good reason can be given." In the process, however, it warned that defining reasonable doubt by reference to a "good reason" is "an incorrect statement of law which should never be made." Id. at 1266. It described Dunn with approval and distinguished Dunn based on the absence of other troubling phrases and the presence of corrective language.

> The trial court's next sentence after mentioning the contested "good reason" explained that "[t]he doubt, to be reasonable, must therefore arise because of the nature and quality of the evidence in the case, or from the lack or insufficiency of the evidence in the case." Thus the trial court's use of the word "good" was intended, and likely understood, to mean that the proper foundation of a reasonable doubt was in fact rather than fantasy.

Id. at 1268 (emphasis in original). See also Beverly v. Walker, ___ F.3d ___, ___, 1997 WL 358601, at *4 (2d Cir. 1997) ("[A]lthough the [requirement of a] 'good sound substantial' [reason] should not be used, and we applaud the [New York state court] for condemning it in the exercise of its supervisory authority, we cannot conclude that the entire charge was constitutionally deficient."), petition for cert. filed, ___ U.S.L.W. ___ (U.S. Jul. 17, 1997) (No. 97-5232). Because Humphrey's instruction contained the expressions "grave uncertainty," "moral certainty," and "actual or substantial doubt,"

14

as well as the qualifier "good," this case presents a more serious due process problem than the <u>Vargas</u> or <u>Chalmers</u> courts faced.

A handful of other cases have affirmed convictions when the court instructed the jury that it must articulate its doubts, but only one case had the benefit of <u>Cage</u>. In that case, the D.C. Circuit approved a pattern instruction that defined reasonable doubt as "a doubt for which you can give a reason." <u>United States v. Dale</u>, 991 F.2d 819, 853 (D.C. Cir.) (per curiam), <u>cert. denied</u>, 510 U.S. 906, 114 S. Ct. 286, 126 L. Ed. 2d 236, <u>and</u> <u>cert. denied</u>, 510 U.S. 1030, 114 S. Ct. 650, 126 L. Ed. 2d 607 (1993). As in <u>Vargas</u> and <u>Chalmers</u>, the instruction steered clear of further reasonable-doubt shoals. The court quickly concluded that it was substantially equivalent to <u>Cage</u>'s definition of reasonable doubt as doubt "founded upon a real tangible substantial basis and not upon mere caprice and conjecture." <u>Id.</u> Like the pre-<u>Cage</u> cases, <u>Dale</u> did not discuss whether an articulation requirement compromises due process rights when given in conjunction with other problematic instructions. See <u>Leecan v. Lopes</u>, 893 F.2d 1434, 1443-44 (2d Cir.) (following precedent and holding that a petitioner who did not object at trial could not obtain a writ where the instruction referred to "a doubt for which a reasonable man can give a valid reason" and failed to state that lack of evidence can be a basis for reasonable doubt), <u>cert. denied</u>, 496 U.S. 929, 110 S. Ct. 2627, 110 L. Ed. 2d 647 (1990); <u>Murphy v. Holland</u>, 776 F.2d 470, 476-79 & n.4 (4th Cir. 1985) (allowing an instruction referring to "a doubt for which a reason can be given,"

15

"actual and substantial" doubt, and "not a mere possible doubt," but noting that inarticulable doubt can be reasonable doubt and emphasizing lengthy curative instructions), vacated on other grounds, 475 U.S. 1138, 106 S. Ct. 1787, 90 L. Ed. 2d 334 (1986); United States v. Davis, 328 F.2d 864, 867-68 (2d Cir. 1964) (Friendly, J.) (criticizing an articulation-demanding reasonable doubt instruction prior to Winship, but refusing to analyze its constitutionality because the petitioner failed to object at trial).

The offending language in Humphrey's case has been contained in cases in which this court has rejected other reasonable-doubt objections. See, e.g., Schneider v. Day, 73 F.3d 610 (5th Cir. 1996) (a similar instruction containing the phrases "substantial doubt" and "moral certainty" and requiring articulation of a good reason); Weston v. Ieyoub, 69 F.3d 73 (5th Cir. 1995) (an identical instruction); Bias v. Ieyoub, 36 F.3d 479, 481 (5th Cir. 1994) (same). Those panels, however, were not faced with and did not consider whether the requirement that a juror be able to articulate a good reason, in addition to the phrases "grave uncertainty," "moral certainty," and "actual or substantial doubt," made the proffered instruction unconstitutional. In other words, we have not decided the issue we face today. As discussed above, where a jury instruction has been weakened by the phrases disapproved of in Cage and Victor, the requirement that a juror be able to articulate a good reason leaves the constitutionality of the instruction beyond repair.

16

The facts of this case offer a powerful example of the centrality to criminal trials of the role of reasonable doubt and the importance of its explanation to the jury. This was a close and difficult case. There was only one witness against Humphrey. J. testified that Humphrey had sex with her "more than twenty times" and that these incidents happened "[t]he whole time [J.] lived" at the home in Metairie. She could not state the specific dates of any of the rapes. She could not state how many rapes occurred. She could not say when she moved from the home in Metairie, only that it was "in 1981 or '82." By the age of fourteen, J. was using drugs and engaging in promiscuous behavior. When she failed the ninth grade, J. claimed her mother neglected her. J. admitted that she had problems with depression and alcohol abuse and that she had previously accused Humphrey of inappropriate sexual touching but later changed her story. J.'s mother admitted that at that time J. was unreliable and untruthful.

The state gave the jury little in support of J.'s version of events. It did not call J.'s brother as a witness, even though he was present on many or all of the baby-sitting occasions. The state did not call J.'s grandmother, to whom J. first reported the sexual abuse and later recanted. The state presented no medical evidence of J.'s condition. Instead, the state relied on a "child sexual abuse accommodation syndrome" expert. This "expert" had an undergraduate degree in sociology, a masters degree in social work, and had attended workshops sponsored by groups active in rape issues. She had never examined J. However, over objection, she

17

offered her expert opinion that children subjected to incest may repress the memory for years, engage in drug abuse or promiscuous behavior, and report the incident and then retract it. That is, this syndrome was used to explain J.'s erratic behavior. On the other hand, the defense offered expert testimony of a 65% false reporting phenomenon in child abuse cases.

Of course, a case need not be close in order for us to find reversible error in the reasonable-doubt instruction. But Humphrey's is a close case nevertheless and makes clear the importance of affording defendants the rights established in Cage and reinforced in Victor. This is not to suggest that Humphrey's conviction was not supported by sufficient evidence; only that the evidence was meager and the conviction unpredictable.

While the Court has noted that the reasonable doubt standard "defies easy explication," Victor, 511 U.S. at 5, 114 S. Ct. at 1242, we think that limiting reasonable doubt to doubt for which a good reason can be articulated, in conjunction with the other instructional errors in Humphrey's charge, creates a lower standard of proof than due process requires. We do not suggest that a jury ought to be instructed that it needs no reason. Rather, inability to articulate a good reason for doubt does not make the doubt unreasonable. In sum, we find it reasonably likely that the jurors understood the instruction to permit conviction upon a lesser burden than reasonable doubt as required by Cage-Victor.

IV.

18

Humphrey also argues that there is insufficient evidence of an offense within the limitations period. At the time of the offense, the statute of limitations was six years. See LA. CODE CRIM. PROC. ANN. art. 572(1) (West 1981). The indictment was filed January 21, 1988, so Louisiana could prosecute any rape occurring on or after January 21, 1982. Effective September 10, 1987, Louisiana enacted a tolling provision: "The time limitations . . . shall not commence to run . . . until the relationship or status involved has ceased to exist where: . . . The offense charged is . . . aggravated rape . . . and the victim is under the dominion or control of the offender while under seventeen years of age." 1987 LA. SESS. LAW SERV. Act 587 (West). Louisiana follows the rule that amendments to the statute of limitations are valid retroactively only to crimes that are not prescribed when the amendment takes effect. See Louisiana v. Adkisson, 602 So. 2d 718 (La. 1992) (per curiam).

The prescriptive bite of Louisiana law is unclear when a defendant is convicted under an indictment that covers a period of time that is partly barred by the statute of limitations and partly within the statute of limitations. Assuming without deciding that the trial court here misapplied Louisiana law, the misapplication of Louisiana law does not rise to the level of a deprivation of constitutional right.

V.

Even though we find Humphrey's argument that the reasonable-doubt instruction given at his trial violates the standards promulgated by the Supreme Court in Cage and Victor, we are barred

19

from granting relief by previous decisions in this circuit.  This matter would be better considered by an en banc court with the power to reconsider the entirety of the issue.

The district court's judgment denying the habeas petition is AFFIRMED.