714 So.2d 258 (1998)
STATE of Louisiana
v.
Terrance J. WILLIAMS.
No. 97-KA-1135.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
*259 Bruce G. Whittaker, Louisiana Appellate Project, Gretna, for Appellant Terrance Williams.
Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Assistant District Attorney, Research and Appeals, Gretna, for Appellee State.
Before GAUDIN, WICKER and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Terrance J. Williams, appeals from his conviction of second degree murder. We affirm the conviction and sentence for second degree murder, reverse the conviction of contempt and vacate the sentence and remand.
On January 25, 1995, defendant and Sedric Robinson (Robinson) were charged with the first degree murder (La. R.S. 14:30) of Jason Paul Bies (Bies) by a Jefferson Parish Grand Jury indictment. Defendant was arraigned on February 16, 1996 and pled not guilty.
On October 16, 1996, the trial court took up defendant's motions to suppress evidence, statements and identification and held them open. On June 17, 1997, the trial court denied the motions to suppress the evidence and identification. The record does not show that the trial court ruled on the motion to suppress statements.[1] On the same day, the state reduced the charge against defendant to second degree murder (La. R.S. 14:30.1) and the case proceeded to trial as to him only. On June 18, 1997, a jury of twelve persons found defendant guilty of second degree murder.
On June 25, 1997, defendant filed a motion to set aside the jury verdict. The motion was denied in open court on July 25, 1997.[2] Defendant waived sentencing delays and the trial court sentenced him that day to the mandatory term of life imprisonment, without benefit of parole, probation or suspension of sentence. Defendant was disorderly during sentencing and the trial judge found him in contempt of court and sentenced him to six months imprisonment without hard labor.
Robinson testified at trial for the state under an agreement by which he was allowed to plead guilty to accessory after the fact to *260 murder. He testified that, on October 26, 1995 at approximately 1:00 p.m., defendant telephoned him to ask for a ride to his girlfriend's house. Robinson stated that defendant was a friend whom he had met through his job as an Orleans Parish deputy sheriff. After Robinson picked up defendant, defendant asked him to drive to the apartment of a mutual friend, Bies. Bies was a former deputy sheriff whom Robinson had met at work.
They arrived at Bies' apartment at about 2:15 p.m. Bies greeted them at the door, welcomed them inside and invited them to sit. According to Robinson, defendant asked to see Bies' guns. Bies went into a back room and returned with a box containing a nine millimeter handgun. Bies removed the clip and handed the gun to defendant. After inspecting it, he returned it to Bies. Then, defendant showed Bies two handguns. After removing a clip, he handed them to Bies.[3] Bies looked at the guns, then returned them to defendant. Defendant then asked Bies whether he had "hooked up that deal for me." Bies said that he had paged the man in question, but had received no response. Defendant asked to see another gun of Bies. Bies retrieved a shotgun that he used for hunting. After showing the gun to defendant, Bies then returned it to the back room. While he was gone, Robinson twice asked defendant if he was ready to leave. Defendant did not answer either time. Bies returned to the front room and defendant asked for another look at the nine millimeter weapon. After Bies handed the gun to defendant, defendant pointed his own gun at Bies. Defendant asked, "Bitch, where's it at?" Bies responded that he did not know what defendant meant. Defendant said, "Bitch, you know what I'm talking about." Bies told defendant to stop playing around. Defendant responded, "Bitch, you think I'm playing?" Defendant then shot Bies in the forehead. Robinson testified that defendant was standing about one and one-half feet away from Bies when he fired the shot and that Bies was sitting on a sofa. Robinson testified that Bies did nothing to provoke the shooting. Defendant next ordered Robinson to search the apartment for valuables while he kept watch outside the front door. Robinson went to the back of the apartment and watched defendant through a window. He saw a white woman in her twenties walk past defendant. After defendant returned to the apartment, he asked Robinson if he had found anything. Robinson said that he had not, but defendant searched the bedroom anyway. As they were leaving the apartment, defendant pointed his gun at Bies again and said that he was going to have to "Pop this bitch one more time." Robinson stopped defendant, telling him not to shoot because Bies was dead. Robinson drove defendant to a nearby convenience store where defendant made a call on a pay telephone. Robinson returned home after driving defendant to his girlfriend's house. Robinson did not contact the police, but told his friend, Monica Spurlock (Monica), about the shooting. Some weeks later, Robinson fled to Texas.
Pamela Dinicola (Dinicola), the girlfriend of Bies, arrived at Bies apartment between 3:40 and 3:45 p.m. that afternoon to find him sitting on the couch, moaning and bleeding profusely. Bies was unable to move or speak. Dinicola telephoned for emergency assistance. Paramedic Danny Gurtner (Gurtner) testified that he received the dispatch at 3:39 p.m. When Gurtner and his partner Jonathan Jones arrived at the scene, Bies was still alive. They administered first aid and transported Bies to Meadowcrest Hospital where he later died.
Deputy Troy Irsch of the Jefferson Parish Sheriff's Office (JPSO) was the first officer to arrive at the apartment. He secured the scene. He testified that he did not detect any signs of forced entry. Deputy Charles Pittman, a crime scene technician of the JPSO, photographed the scene and collected evidence, including a .40 caliber expired cartridge case found next to the sofa.
Lt. Maggie Snow, a homicide detective with the JPSO, supervised the investigation. Upon investigating at the scene, she located *261 a witness, Carista Ramage (Ramage), who said that she lived next door to Bies' apartment and that upon walking to her door earlier that day, she saw a man standing in the doorway of Bies' apartment and another next to a nearby air conditioning unit. Ramage gave a description to police artist Major Tom Gordon, who developed a composite sketch of one of the suspects. On November 7, 1995, Lt. Snow showed Ramage a lineup of eight photographs. Ramage identified defendant as one of the men she had seen on the day of the murder. She stated that she was ninety per cent certain of her identification.
Deputy United States Marshal Ronnie Johnson testified that on November 15, 1995 he went to a house on Breckenridge Drive in Harvey, where he believed defendant was living. He was accompanied by several other marshals and officers from the New Orleans Police Department.[4] Deputy Johnson knocked on the door for several minutes, but got no response. Another officer spotted defendant through a window of the residence. A neighbor confirmed that defendant was living in the house.
Eventually the officers used force to enter the house. They ordered defendant to lie face down on the floor and handcuffed him. Defendant was placed under arrest. The officers performed a protective search of the house and found another man and a woman there. The officers discovered an assault rifle in plain view in the bedroom that defendant was using. A second assault rifle was found in a back bedroom. At that point Deputy Marshal Dysart advised defendant of his Miranda rights. The officers requested defendant's permission to search the house. Defendant gave his consent to search everything, except a safe which belonged to someone else. Deputy Johnson asked defendant if there were any other guns in the house. Defendant stated that there was a .40 caliber Glock pistol in his bedroom under a chest of drawers. The officers found the gun in the place indicated, recovered two magazines with clips and did not immediately remove the guns from the premises, but secured the house while a search warrant was obtained.
Lt. Snow was dispatched to the arrest scene, where the marshals showed her the Glock pistol and the dresser under which it was found. On top of the dresser was a business card with Jason Bies' name (spelled "Beez"), telephone number and beeper number hand written on the back. Captain Louise Walzer, an expert in forensic firearms examination, test fired the Glock pistol and determined that the cartridge case found at the murder scene was fired by that weapon.
Based on information from Robinson's girlfriend, Lt. Snow obtained an arrest warrant for Robinson. He was arrested in Texas on December 20, 1995, but was not extradited to Louisiana until October of 1996. On October 18, 1996, in the presence of his attorney, Robinson gave a tape recorded statement to Lt. Snow which was corroborated by other evidence collected in the case.
Dr. Frasier Mackenzie performed an autopsy on Bies. He testified that the victim died of a gunshot wound to the head with perforating wounds to the brain. The bullet took a track from above to below, indicating that the victim was sitting and the gunman standing. Dr. Mackenzie recovered a bullet pellet and a bullet jacket from Bies' head.

ANDERS APPEAL
On appeal, defendant's appellate counsel filed an "Anders" brief, asserting that, after a detailed review of the record, counsel could not find any ruling of the trial court or non-frivolous issues to raise on appeal. Counsel states that he forwarded to defendant a copy of the brief he filed with this court. However, counsel did request a review for patent error. He also filed a motion to withdraw, pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, reh. denied, 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967).
In State v. Jenkins, 94-72 (La.App. 5th Cir. 11/29/94), 646 So.2d 1197, 1198, we stated:
Under Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), *262 and Lofton v. Whitley, 905 F.2d 885 (5th Cir.1990), counsel's failure to assign error or to assign only a request for error patent review has the effect of depriving the indigent defendant of effective assistance of counsel. However, the United States Supreme Court in Anders, also set forth the procedure to follow when, after a diligent and conscientious review of the record, counsel fails to find any non-frivolous appealable issues. In Anders, the court stated:
The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae. The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the courtnot counselthen proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or precede to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal. Anders, 386 U.S. at 744, 87 S.Ct. at 1400.
The United States Fifth Circuit, Court of Appeals applied Anders to the case where defense counsel files a brief solely asking for an error patent review. The court determined that, by so doing, counsel effectively withdrew without complying with the requirements of Anders. Lofton v. Whitley, 905 F.2d at 887 (5th Cir.1990).
Defendant's appellate counsel complied with the procedure approved by the United States Supreme Court in Anders and State v. Benjamin, 573 So.2d 528 (La.App. 4th Cir. 1990), adopted in State v. Bradford, 95-929 (La.App. 5th Cir. 6/25/96), 676 So.2d 1108. The state notes in its appeal brief that it finds no non-frivolous issues in the record. Defendant filed a brief in response to the letter issued by this court.

ANDERS REVIEW
An examination of the record in the instant case was conducted by the court, consisting of (1) a review of the bill of information to ensure that defendant was properly charged, (2) a review of all minute entries to ensure that defendant was present at all crucial stages of the proceedings and that the conviction and sentence are legal; (3) a review of all the pleadings in the record and (4) a review of all the transcripts to determine if any ruling provides an arguable basis for appeal. We find two non-frivolous issues, one of which requires a reversal of the contempt adjudication and sentence. However, both are also reviewable under error patent. Thus, we will address those issues in the error patent discussion.

PRO SE ASSIGNMENT OF ERROR
Defendant filed a brief in response to the letter issued by this court. He asserts that the evidence was insufficient to convict him of second degree murder because the state failed to produce any direct evidence that defendant had the specific intent to kill the victim. He argues that, at best, the evidence supports a conviction of manslaughter. Defendant asserts that the state's witness, Robinson, testified that defendant removed the clip from his handgun and handed it to Bies. Bies checked it out and then handed it back to defendant. Defendant argues that there is no testimony that defendant put the clip back into the gun or that defendant knew the gun was loaded when he pulled the trigger. Although Robinson testified that defendant *263 and the witness did not argue before the shooting, Monica, Robinson's girlfriend, testified that he told her that there had been an argument. Defendant asserts that these facts show that he performed a rash act during an argument. Thus, he concludes that the state failed to prove the essential elements for second degree murder. Defendant requests a reversal and new trial or that the case be remanded for re-sentencing.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Thorne, 93-859 (La.App. 5th Cir. 2/23/94), 633 So.2d. 773, 776 State v. Styles, 96-897 (La.App. 5th Cir. 3/25/97), 692 So.2d 1222, 1232; State v. Ortiz, No. 96-KA-1609 (La.10/21/97), 701 So.2d 922, 930.
In order to prove guilt by circumstantial evidence, the state must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. This is not separate from the Jackson standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 701 So.2d at 930.
In order to prove second degree murder, the state must prove (1) the killing of a human being and (2) that defendant had the specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1; State v. Thorne, 633 So.2d at 777.
Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). It is a question of fact. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, 373. Specific intent may be Ted from circumstances and actions of defendant. Id. at 373; State v. Silva, 96-459 (La.App. 5th Cir. 11/26/96), 685 So.2d 1119, 1125. For the purposes of second degree murder, specific intent may be inferred from the pointing of a gun at close range and pulling the trigger. State v. Seals, 684 So.2d at 373; State v. Thorne, 633 So.2d at 777.
In this case, the eyewitness, Robinson, testified that the victim did not provoke defendant prior to the shooting. Although Robinson did not testify that he saw defendant reload the weapon after the victim returned it to him, the gun was never out of defendant's sight and there is no allegation that anyone else could have loaded the weapon without his knowledge. Defendant was one and one-half feet from the victim when he shot him. The bullet that killed the victim was proven to come from defendant's gun. In addition, as defendant and Robinson were leaving the apartment, defendant stopped, pointed his gun at Bies for the second time and said that he was going to have to shoot the victim again.
Viewing the evidence in the in the light most favorable to the prosecution, we find that the state proved the essential elements of the crime of second degree murder beyond a reasonable doubt.

ERROR PATENT REVIEW
La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Boudreaux, 95-153 (La.App. 5th Cir. 9/20/95); 662 So.2d 22, 28.
First, we note that the record does not reflect whether or not the trial judge *264 ruled on the motion to suppress statements, which was based on the state's failure to notify defendant of any statements it intended to use at trail. However, the record reflects that the motion was moot because the state provided defendant with the information. Further, defendant proceeded to trial without objecting that the motion was outstanding. Thus, he waived all pending motions at the commencement of trial. State v. Price, 96-680 (La.App. 5th Cir. 2/25/97), 690 So.2d 191, 196.
Second, the contempt adjudication against defendant was not in compliance with La.C.Cr.P. art. 22, which states:
A person who has committed a direct contempt of court may be found guilty and punished therefor by the court without any trial, after affording him an opportunity to be heard orally by way of defense or mitigation. The court shall render an order reciting the facts constituting the contempt, adjudging the person guilty thereof, and specifying the punishment imposed.
Here, the trial judge found defendant in contempt without affording him an opportunity to be heard orally by way of defense or mitigation. In addition, the trial judge failed to render an order reciting the facts constituting the contempt and adjudging defendant guilty thereof. The trial judge did specify the punishment imposed. Accordingly, the judgment of contempt is reversed and the sentence is vacated.
Third, our review reveals that defendant was not advised of the three-year time limit for filing an application for post conviction relief, as required by La.C.Cr.P. art. 930.8. This article dictates that, except under certain limited circumstances, a defendant must file his application for post-conviction relief within three years after his judgment of conviction. Section C provides that the trial judge shall inform defendant of this prescriptive period at the time of sentencing. However, the failure to inform the defendant is not a ground for vacating the sentence. Rather, the remedy is to remand the case with an instruction to the trial judge to inform defendant of the provisions of article 930.8 by sending written notice to defendant within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice. State v. Birden, 675 So.2d at 1190-1191; State v. Crossley, 94-965 (La.App. 5th Cir. 3/15/95), 653 So.2d 631, 636-637, writ denied, 95-0959 (La.9/15/95), 660 So.2d 459.
Accordingly, defendant's conviction of second degree murder and sentence are hereby affirmed. The case is remanded for the trial judge to inform defendant of the provisions of article 930.8 by sending written notice to defendant within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice.
CONVICTION AND SENTENCE FOR SECOND DEGREE MURDER AFFIRMED; CONVICTION FOR CONTEMPT REVERSED AND SENTENCE VACATED; CASE REMANDED.
NOTES
[1] In his motion, defendant merely contested the use of any statements without prior notification by the state. The record shows that the state notified defendant of all statements it intended to use at trial and the motion is moot.
[2] A written order shows that it was denied on July 7, 1997.
[3] The testimony was unclear as to whether defendant removed the clip from only one gun or both of the guns he showed to Bies. Robinson said he removed the clip, but also said that Bies looked at two guns.
[4] Deputy Johnson testified during a motion hearing that they were there to execute an arrest warrant from Orleans Parish, where defendant was wanted for attempted murder.