Revised February 11, 2000

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**
_____

**No. 99-30146**
_____

**BUFORD ANTHONY DUPUY,**

                                        **Petitioner-Appellant,**

                    **versus**

    **BURL CAIN, Warden, Louisiana State Penitentiary,**

                                        **Respondent-Appellee.**
_____

        **Appeal from the United States District Court**
            **for the Western District of Louisiana**
_____
                    January 24, 2000

Before JONES, BARKSDALE, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

    For this *pro se*, successive habeas petition, considered pursuant to the applicable standards prior to those imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), primarily at issue is whether the district court abused its discretion in determining that the challenged reasonable doubt jury instruction was *not* prejudicial for abuse of writ purposes. The other claims were also treated similarly. We **AFFIRM**.

I.

Buford Anthony Dupuy's 1974 conviction for second-degree murder and life-sentence were affirmed in December 1975. *State v. Dupuy*, 319 So.2d 299 (La. 1975).

Dupuy's first federal habeas petition, filed in 1977, contended: (1) that the evidence seized during claimed unconstitutional searches of his residence should have been excluded; (2) that he was *not* allowed to examine certain prosecution evidence; and (3) that he had received an unfair trial, based on claimed prejudicial remarks by the prosecutor. The petition was dismissed, on the merits, in 1979. Our court denied a certificate of probable cause (CPC) in August 1982.

Dupuy's second, successive petition was filed on 12 April 1996, approximately two weeks before AEDPA became effective. He raised seven new claims for relief: (1) that the use of his confession violated the Fifth, Sixth, and Fourteenth Amendments; (2) that the evidence was insufficient to convict him; (3) that he received ineffective assistance of counsel; (4) that the reasonable doubt and specific intent instructions violated the Fourteenth Amendment; (5) that women were unconstitutionally excluded from the grand and petit juries; (6) that the State suppressed evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (7) that his sentence was illegal.

Pre-AEDPA, raising a new claim in a subsequent habeas petition constitutes an abuse of the writ, *unless* the petitioner can

- 3 -

demonstrate *both* cause for *not* raising the claim in the first petition and actual prejudice if the claim is *not* considered; if he fails to do so, the court may still reach the merits in order to prevent a "fundamental miscarriage of justice". *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

Pretermitting whether Dupuy had shown cause, the magistrate judge determined that Dupuy would *neither* be prejudiced, *nor* suffer a fundamental miscarriage of justice, and, therefore, recommended that the writ be dismissed, pursuant to Rule 9(b) of the Rules Governing Section 2254 Proceedings in the United States District Courts.

The district court adopted the magistrate judge's report and recommendation, except for the claim concerning Dupuy's sentence. For it, the court concluded that the sentence was illegally lenient and that, therefore, Dupuy had *not* been prejudiced. The petition was dismissed with prejudice, as an abuse of the writ.

## II.

As in district court, Dupuy proceeds *pro se*. Because his second habeas petition was filed prior to AEDPA, pre-AEDPA habeas law applies. *Lindh v. Murphy*, 521 U.S. 320 (1997). Nevertheless, the district court granted an AEDPA certificate of appealability (COA) for four of the seven claims. A COA is the substantive equivalent of a pre-AEDPA CPC, *Blankenship v. Johnson*, 118 F.3d 312, 315 & n.2 (5th Cir. 1997); but, when a pre-AEDPA CPC is

granted, we consider *all* of the claims raised in the petition. **Sherman v. Scott**, 62 F.3d 136, 138-39 (5th Cir. 1995), *cert. denied,* 516 U.S. 1093 (1996). (Accordingly, our court permitted Dupuy to file a supplemental brief covering the issues for which the district court had *not* granted a COA.)

As noted, a federal habeas petitioner is required to raise all issues in the first petition; a subsequent, pre-AEDPA petition raising new issues is subject to dismissal for abuse of writ, pursuant to Rule 9(b). **Rodriguez v. Johnson**, 104 F.3d 694, 696 (5th Cir.), *cert. denied,* 520 U.S. 1267 (1997). Once the State has met its burden of pleading such abuse, the petitioner must show *either* cause and prejudice concerning the failure to plead the issue in the first petition, *or* a fundamental miscarriage of justice. **Id.** at 697.

We review an abuse of writ dismissal for abuse of discretion. **Id.** at 696. As did the district court, instead of looking to cause *vel non*, we examine Dupuy's claims to determine either actual prejudice or a fundamental miscarriage of justice *vel non*.

To show prejudice, Dupuy must demonstrate, "not merely that the error at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions". **United States v. Frady**, 456 U.S. 152, 170 (1982). Similarly, a

miscarriage of justice occurs *only* in those "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime". ***McCleskey****,* 499 U.S. at 494.

For starters, in reviewing for actual prejudice or a fundamental miscarriage of justice, we reject Dupuy's objections concerning the procedure employed by the district court for this Rule 9(b) question: (1) that by analyzing Dupuy's substantive issues in the Rule 9(b) context, he has been held to a higher standard of review; (2) that there are unresolved factual issues regarding the state court suppression hearing which should *not* have been resolved without an evidentiary hearing; (3) that the district court erroneously relied on an uncertified state court record; (4) that the State's answer was served on him without copies of the attached exhibits, and the district court failed to rule on his motion to have the State provide him those exhibits; (5) that an unresolved factual dispute remains; and (6) that the district court's order, that no further motions would be entertained while the Rule 9(b) issue was pending, prohibited him from conducting discovery and prosecuting his habeas petition. In sum, the procedure employed by the district court for this Rule 9(b) matter was proper.

A.

For Dupuy's claim that the reasonable doubt and specific intent instructions were unconstitutional, we review a challenged instruction to determine whether it so infected the entire trial that the resulting conviction violated due process, *not* merely whether it is undesirable, erroneous, or even universally condemned. *Rodriguez*, 104 F.3d at 699 n.8.

1.

The reasonable doubt instruction provided:

> A reasonable doubt is a fair doubt based upon reason and common sense and arising from a state of the evidence. *It is a doubt that you can give a reason for*. It is rarely possible to prove anything to an absolute certainty. Proof beyond a reasonable doubt is such as you would be willing to rely and act upon in the most important of your own affairs. A defendant is never to be convicted on mere suspicions or conjectures. A reasonable doubt may arise not only from the evidence produced but also from a lack of evidence. Since the burden is always on the prosecution to prove the accused guilty beyond a reasonable doubt of every essential element of the crime charged, a defendant has the right to rely upon the failure of the prosecution to establish such proof. A defendant may also rely upon evidence brought out on cross examination of a witness for the prosecution. The law never imposes upon a defendant in a criminal case, the burden or duty of producing any evidence. A reasonable doubt exists in any case when after careful and impartial consideration of all the evidence in the case, *the jurors do not feel convinced to make [sic] a moral certainty* that the defendant is guilty of the charge against him.

(Emphasis added.)

Dupuy contends that the "moral certainty" language suggests a higher level of doubt than that — reasonable doubt — required for acquittal, citing *Cage v. Louisiana*, 498 U.S. 39 (1990). There, the Court held that the charge

> equated a reasonable doubt with a "grave uncertainty" and an "actual and substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty. It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard.

*Id*. at 41.

*Victor v. Nebraska*, 511 U.S. 1 (1994), modified *Cage*. The three phrases were still disapproved; accordingly,

> trial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires. [But, for the] cases [under review], we conclude that taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury.

*Id*. at 22.

Thereafter, in *Schneider v. Day*, 73 F.3d 610, 611 (5th Cir. 1996), for example, our court held that the reasonable doubt instruction at issue there, which employed "an actual and substantial doubt", "a serious sensible doubt as such you could give a good reason for", and "a moral certainty", was acceptable. In so doing, our court applied *Victor*, and held "that there is no

reasonable likelihood that the jury ... applied the instruction in a way that violated the Constitution". *Id*. at 611.

*Humphrey v. Cain*, 138 F.3d 552 (5th Cir.)(en banc), *cert. denied, ___U.S.___,* 119 S. Ct. 348, *and cert denied, ___U.S.___,* 119 S. Ct. 365 (1998), adopted the panel opinion, 120 F.3d 526 (1997), concerning, *inter alia*, whether the defendant was prejudiced by the reasonable doubt instruction. The instruction provided, at the end, that the jury "could acquit only if it had a serious doubt, for which you could give good reason"; it earlier employed the terms "substantial doubt", "grave uncertainty", and "moral certainty". The requirement that a juror had to have a "serious doubt, for which [he] could give a good reason", *in conjunction with* the disapproved phrases, was held to violate due process. See *Humphrey*, 120 F.3d at 530 (panel opinion). But, *Humphrey* expressly did *not* consider whether the "give good reason" requirement, alone, was violative of due process. *Id*. at 531.

Dupuy's reasonable doubt instruction contains favored and disfavored phrases. Of course, it is *not* the use of a single phrase that determines whether a jury instruction is unconstitutional; instead, the instruction is examined as a whole. *Victor,* 511 U.S. at 22.

Dupuy's instruction required jurors to be able to articulate a "good reason" and had one of the disfavored *Cage* phrases ("moral certainty"). But, otherwise, the instruction has far less

- 9 -

disfavored language than in *Humphrey*; and, additionally, the instruction has further clarifying language to assist in determining reasonable doubt *vel non*. *Humphrey*, 120 F.3d at 533 (discussing why *Schneider* and other cases, faced with "good reason" phrase held instruction *not* unconstitutional, because *not* faced with all the other disfavored phrases as in the *Humphrey* instruction). Moreover, the "good reason" requirement is placed much earlier in the instruction and given far less emphasis. Finally, *Humphrey* was *not* a successive petition/abuse of writ situation, as is the case at hand.

We conclude that the district court did *not* abuse its discretion in holding that Dupuy has *not* shown the requisite prejudice resulting from the instruction. For example, unlike *Humphrey*, as discussed *infra*, this is *not* a "close case" as to guilt or innocence. *Id.*

2.

The specific intent jury instruction provided:

> As a general rule it is reasonable to infer that a person ordinarily intends all the natural and probable consequences of acts knowingly done or knowingly omitted by him. So, unless the evidence in this case leads the jury to a different or contrary conclusion, the jury may draw the inference implied and find that the accused intended all the natural and probable consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused.

- 10 -

Dupuy contends that this instruction created a presumption of intent, prohibited by *Sandstrom v. Montana*, 442 U.S. 510, 515 (1979). It held that the phrase "the law presumes that a person intends the ordinary consequences of his voluntary acts" created such a prohibited presumption. *Id*.

Here, the instruction provided for an allowable inference; it did *not* create the prohibited presumption. Accordingly, the court did *not* abuse its discretion in determining that Dupuy has *not* demonstrated prejudice.

B.

Dupuy asserts that his due process rights were violated because his confession was elicited in violation of the Fifth and Sixth Amendments.

Dupuy must demonstrate that his confession was *not* voluntarily given and that, *for this abuse of writ inquiry*, the district court abused its discretion in determining that he was *not* prejudiced. "[T]he ultimate question whether, under the totality of the circumstances, [a] challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination." *Muniz v. Johnson*, 132 F.3d 214, 219 (5th Cir.), *cert. denied*, ___ U.S.___, 118 S.Ct. 1793 (1998) (citation omitted). "Subsidiary factual questions, however, are entitled to a presumption of correctness". *Id.* at 219.

1.

After Dupuy's arrest, he was interrogated at the sheriff's office, beginning with the Sheriff asking Dupuy whether he knew his rights. Dupuy responded that he did, and then admitted killing Normand in a "tussle". (At trial, Dupuy's defense was based upon Normand being accidentally shot during a "tussle". *Dupuy*, 319 So.2d at 301.)

Dupuy's motion to suppress the confession, because he had *not* been advised of his rights, was denied. At the hearing on that motion, a Deputy Sheriff testified that he could *not* remember if Dupuy had been read his rights pre-interrogation. Another Deputy testified that, when he arrested Dupuy, he read him his rights; that initially, Dupuy stated that he did *not* understand; that he then reread those rights to Dupuy; and that, Dupuy stated that he understood.

Moreover, at the sheriff's office, prior to the interrogation, Dupuy signed a memorandum waiving his rights. Additionally, the Sheriff testified that he

> told [Dupuy], of course, that we were there to talk to him and that we were going to read him his rights or tell him his rights and that's when he told us we didn't have to. That they had already been read to him. And, he already knew his rights and that we didn't have to tell him his rights.

The magistrate judge noted that Dupuy had *not* offered *any* evidence to demonstrate that he had *not* waived his rights, and,

- 12 -

accordingly, determined that Dupuy failed to overcome the presumption of correctness that attaches to state-court fact finding. *See Mann v. Scott*, 41 F.3d 968, 976 (5th Cir. 1994), *cert. denied*, 514 U.S. 1117 (1995). In sum, Dupuy has *not* demonstrated prejudice. Therefore, there was *no* abuse of discretion by the district court.

2.

Citing *Edwards v. Arizona*, 451 U.S. 477, 487 (1981), Dupuy maintains that he requested counsel immediately after his arrest, and should *not* have been interrogated without counsel being present. Dupuy's conviction, however, became final prior to *Edwards*. To the extent that *Edwards* created a new *per se* rule, it does *not* apply retroactively to cases on collateral review. *See Solem v. Stumes*, 465 U.S. 638, 650 (1984).

The pre-*Edwards* rule was that States could *not* secure "criminal convictions through the use of involuntary confessions resulting from coercive police conduct". *Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir. 1992), *cert. denied,* 507 U.S. 996 (1993). Dupuy has *not* demonstrated an abuse of discretion by the district court's concluding that the admission of the confession did *not* work to his "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions". *Murray v. Carrier*, 477 U.S. 478, 493 (1986).

Dupuy next raises a sufficiency challenge regarding his intent to kill Normand. For such a claim, we consider whether, viewing the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt". *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard is applied with "explicit reference to the substantive elements of the criminal offense as defined by state law". *Id.* at 324 n.16. Under Louisiana law, the elements of second degree murder are (1) the killing of a human being; and (2) that defendant had the specific intent to kill or inflict great bodily harm. LA. REV. STAT. ANN. 14:30.1.

Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act". *State v. Williams*, 714 So.2d 258, 263 (La. App. 5 Cir. 1998) (citation omitted). Specific intent is a question of fact which may be inferred from the circumstances and actions of the defendant. *Id.* at 263.

Dupuy admitted killing Normand. He had Jesse Bordelon throw Normand's body into a bayou. Dupuy drove to another location and threw the gun into the bayou. Normand had been hogtied and shot in the back of the head. Normand left a note saying "If I get killed, it's Anthony Dupuy, that did it."

Obviously, the evidence is sufficient for a reasonable juror to find, beyond a reasonable doubt, that Dupuy intended to kill Normand.  The district court did *not* abuse its discretion.

D.

Relying on ***Taylor v. Louisiana***, 419 U.S. 522 (1975), Dupuy contends that he was prejudiced because women were systematically excluded from grand and petit juries. In ***Daniel v. Louisiana***, 420 U.S. 31 (1975), the court held that ***Taylor*** would not be applied retroactively to "convictions obtained by juries empaneled prior to the date of that decision".  ***Id***. at 32*.*  Dupuy's grand and petit juries were empaneled prior to ***Taylor***.

E.

Dupuy asserts that police reports were withheld from him in violation of ***Brady***. To establish such a violation, Dupuy must prove that the State withheld evidence; that it was favorable; and that it was material to the defense.  *E.g.*, ***Little v. Johnson***, 162 F.3d 855, 861 (5th Cir. 1998), *cert. denied,* ___U.S.___, 119 S.Ct. 1768 (1999).

Dupuy maintains that the police report would have shown (1) that Normand's fingerprints were found in Dupuy's home; (2) that Normand was not kidnaped; (3) that a table in Dupuy's home was damaged and that blood samples matching Normand's blood type were found in Dupuy's home; and (4) that there was evidence that would have supported Dupuy's testimony that Normand had been accidentally

killed.  During post conviction proceedings in 1992, 17 years after his conviction, a police report was furnished to Dupuy in response to a discovery request.  Dupuy contends that there are other police reports that were *not* provided to him; however, he has *not* demonstrated that they are in existence.  The State responded that all such records were delivered to Dupuy.

Dupuy did *not* demonstrate that the reports were withheld from him.  Accordingly, the district court did *not* abuse its discretion.

### F.

Dupuy claims that he was illegally sentenced by the trial court, because his sentence failed to specify that he would *not* be eligible for parole, probation, or suspension of sentence for 20 years.  In a state collateral proceeding, the court ruled that the sentence was *not* illegal.  *Louisiana v. Dupuy*, No. 31,391 (12th J.D.C. 27 Aug. 1993) (motion for resentencing).

The district court determined that his sentence was illegally lenient and that, therefore, Dupuy had *not* been prejudiced.  Dupuy has *not* demonstrated that the wording of the court's minute entry will affect his eligibility for release. Accordingly, the requisite abuse of discretion has *not* been shown.

### G.

For his ineffective assistance of counsel claim, Dupuy must show that his attorneys' performance was deficient and that this prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668,

687 (1984).  Dupuy must overcome the strong presumption that their conduct fell within the wide range of reasonable professional assistance.  *Id.* at 689.

### 1.

Dupuy contends that his attorneys failed to object when the prosecution moved to amend the indictment after the voir dire commenced.  The indictment was amended on 31 October 1974.  But, the first juror was *not* called until 4 November 1974.

### 2.

Claiming that false and perjurious testimony was presented to the grand jury that he had committed an aggravated kidnaping, Dupuy contends that his attorney should have moved to quash the original indictment for first degree murder.  Likewise, claiming that, at the preliminary hearing, *no* evidence was presented to show that there was a kidnaping, he asserts that counsel should have moved to suppress the indictment.  But, he was *neither* tried, *nor* convicted, for first degree murder.

### 3.

Dupuy contends that his attorney rendered ineffective assistance in prosecuting the motion to suppress the confession.  As discussed, *supra,* Dupuy has *not* demonstrated prejudice.

### 4.

In conjunction with Dupuy's contention that the evidence was insufficient to prove that he had the specific intent to kill

Normand, Dupuy contends that counsel failed to present motions at the conclusion of trial to protect his rights. But, he concedes that counsel moved to arrest the judgment on grounds of insufficient evidence.

5.

Dupuy asserts that counsel should have objected to the court's reasonable doubt and specific intent instructions. Dupuy's conviction was final in 1975. *Cage* was decided in 1990. The failure to so object, in the light of the state of the law existing at the time, is *not* deficient performance. *Schneider*, 73 F.3d at 612.

6.

Dupuy cites the failure to object to the exclusion of women from grand and petit juries. He states, however, that he believes counsel did object to such exclusion. In fact, counsel moved to quash the indictment (motion denied), because women were *not* impaneled on either the grand or petit jury.

In sum, concerning the ineffective assistance of counsel claims, the requisite Rule 9(b) prejudice is lacking. The district court did *not* abuse its discretion in so concluding.

III.

Dupuy has failed to demonstrate that any of his claims result in either prejudice or a fundamental miscarriage of justice. Accordingly, he has *not* demonstrated that the district court abused

- 18 -

its discretion in denying his second habeas petition on the basis of abuse of writ.  Therefore, the dismissal of Dupuy's second habeas petition is

*AFFIRMED*.

DENNIS, Circuit Judge, concurring:

I concur in the judgment of the court.  I write separately because, in my view, the majority erroneously concludes that had Dupuy established a <u>Cage</u> error his habeas petition might nevertheless have been subject to dismissal for abuse of the writ because a <u>Cage</u> error is not necessarily sufficiently pervasive and prejudicial as to so infect the entire trial that the resulting conviction violated due process.[1]

Preliminarily, I agree that in this case the reasonable doubt instructions taken as a whole are not infirm because "[t]here is no reasonable likelihood that the jurors who determined petitioner's guilt applied the instructions in a way that violated the Constitution." <u>Victor v. Nebraska</u>, 511 U.S. 1, 6 (1994).  This is especially evident when the instant instructions are compared and contrasted to those in <u>Cage v. Louisiana</u>, 498 U.S. 39 (1990) and <u>Humphrey v. Cain</u>, 138 F.3d 552 (5th Cir. 1998)(en banc).  Thus I agree with the majority that Dupuy suffered no <u>Cage</u> error.

<u>Sullivan v. Louisiana</u>, 508 U.S. 275 (1993), as I read it, precludes the possibility that a <u>Cage</u> error may not be sufficiently

---

[1]As both the district court and the majority pretermitted the issue of cause as required in addition to a showing of actual prejudice in a pre-AEDPA subsequent habeas petition raising a new claim, <u>see</u> <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991), I do not contend that a <u>Cage</u> error in and of itself would be enough for Dupuy to avoid dismissal for abuse of the writ -- only that a <u>Cage</u> error is sufficient to satisfy the requisite showing of prejudice.

prejudicial to satisfy the showing required to avoid abuse of the writ dismissal. In Sullivan, Justice Scalia stated in no uncertain terms that a Cage error is not subject to harmless error review because it operates as a complete deprivation of the defendant's Sixth Amendment right to jury trial and violates the Fifth Amendment requirement of proof beyond a reasonable doubt. This result obtains because, unlike many other jury instruction errors, an instructional error misdescribing the burden of proof vitiates all the jury's findings such that reviewing courts "can only engage in pure speculation -- its view of what a reasonable jury would have done. And when it does that, 'the wrong entity judge[s] the defendant guilty.'" Sullivan, 508 U.S. at 280-81 (citing and quoting Rose v. Clark, 478 U.S. 570, 578 (1986)).

Accordingly, I do not believe that we are free to conclude, as the majority opinion suggests, that a Cage error may not be prejudicial. Surely if Dupuy had been convicted and sentenced without a jury finding of guilt, it could only have "worked to his actual and substantial disadvantage, infecting his entire trial withe error of constitutional dimension." United States v. Frady, 456 U.S. 152, 170 (1982). Thus, Dupuy was required to prove only that there was a Cage error, as defined by Sullivan and Victor, in order to show the requisite prejudice to overcome dismissal for abuse of the writ.