IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 13, 2007**

Charles R. Fulbruge III
Clerk

No. 05-51433

UNITED STATES OF AMERICA

Plaintiff-Appellee

V.

JIMMY AGUILAR

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
2:03-CR-784

Before HIGGINBOTHAM, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Jimmy Aguilar, a police officer with the Crystal City, Texas Police Department, was convicted of criminally depriving Victor Jimenez of his civil rights under the Fourth Amendment in violation of 18 U.S.C. § 242, witness tampering in violation of 18 U.S.C. § 1512(b)(1), and making a false statement in violation of 18 U.S.C. § 1001. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I

The events giving rise to the charges arose in the course of investigating a barroom fight in which Gilbert Garcia was badly beaten. Aguilar, Officer Adrian Diaz and Zavala County Sheriff's Department deputies Jesse Lopez and Ricardo Rios were investigating the fight. Victor Jimenez was a suspect in the fight and was eventually taken into custody as he was leaving a private residence. On scene and while Jimenez was handcuffed, Jimenez and Aguilar got into a fight. The two argued, and then Jimenez head butted Aguilar.

The two tussled, hit the side of the police cruiser, and fell to the ground. Aguilar stood up over Jimenez, who was handcuffed and lying on his back, and proceeded to drop his knee onto Jimenez's face. He then began to choke Jimenez. Lopez and Diaz pried Aguilar off Jimenez. According to Lopez, he and Rios then went to talk to a witness. Lopez testified that he heard Jimenez yelling, turned back, and saw Aguilar on top of Jimenez with a knee on his chest, one hand holding his throat, and his gun in Jimenez's mouth, which he was twisting back and forth. The officers pulled Aguilar off of Jimenez. Neither Diaz nor Rios saw the incident with the gun. As a result of the fight, Jimenez suffered fractures to bones in his face, jaw, and neck, requiring the insertion of screws and plates during a fourteen-day hospital stay.

The four officers agreed to lie about what happened. In particular, Aguilar asked that they lie and say Jimenez was not handcuffed during the fight. He also asked that they not mention the knee drop. All the officers lied in their reports, and during their interviews with the FBI.

A federal grand jury was convened. Diaz, Lopez, and Rios received immunity for their testimony. Aguilar tried to convince Rios to lie to the grand jury, but Rios refused. During the FBI's investigation, Aguilar repeatedly lied, primarily by saying that Jimenez was not handcuffed.

Aguilar was indicted for criminally depriving Jimenez of his civil rights under the Fourth Amendment in violation of 18 U.S.C. § 242, using a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c), witness tampering in violation of 18 U.S.C. § 1512(b)(1) for his attempt to get Rios to lie to the grand jury, and making a false statement. The jury convicted him on all counts except the firearm count. The district court sentenced him to 60 months on each count, to be served concurrently. Aguilar appeals on multiple grounds.

## II

## A

Aguilar first argues that the district court abused its discretion in charging the jury on the § 242 count. This court reviews a preserved challenge to an instruction or a refusal to give an instruction for abuse of discretion.[1] In reviewing for error, the court "determines whether the charge as a whole is a correct statement of the law and whether it clearly instructs the jury on the law applicable to the facts."[2]

Aguilar argues that an arrest is not an "event," it's a "process," hence Aguilar was still arresting Jimenez when the altercation occurred. This matters, he suggests, because under the court's instruction the jury could not consider, under the "totality of the circumstances," Jimenez's behavior: the severity of his initial assault against Garcia, the threat he posed to Aguilar, and his continued resistance.

The Supreme Court explained in Graham v. Connor[3] that the "'reasonableness' of a particular use of force must be judged from the perspective

---

[1] United States v. Ibarra-Zelaya, 465 F.3d 596, 607 (5th Cir. 2006).

[2] Id.

[3] 490 U.S. 386 (1989).

of a reasonable officer on the scene."[4]  Graham cautions that "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," but that "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[5]

The district court's instruction sufficiently embodies the principles laid out in Graham.  The instruction references the "circumstances" of this case multiple times; it specifically told the jury to analyze whether Aguilar used reasonable force in holding Jimenez in custody, preventing his escape, or defending himself or another.  In other words, the instruction directed the jury to consider Jimenez's behavior after he was taken into custody, including any resistance and threat to Aguilar.  And, the phrase "circumstances of the case," which appears multiple times, is broad enough for the jury to have considered Jimenez's assault on Garcia.  The district court did not abuse its discretion.

B

Aguilar also argues that the district court's § 242 charge constructively amended the indictment.  This court has previously explained that "a constructive amendment of the indictment is a reversible error per se if there has been a modification at trial of the elements of the crime charged."[6]  We distinguish "between an expansive reading of the indictment that requires reversal and a variance that is a harmless error."[7]  Thus, "we will reverse only

---

[4] Id. at 396.

[5] Id. (quotation marks and citation omitted).

[6] United States v. Nunez, 180 F.3d 227, 230-31 (5th Cir. 1999) (quoting United States v. Salinas, 601 F.2d 1279, 1290 (5th Cir. 1979)).

[7] Id. at 231 (quoting United States v. Ylda, 653 F.2d 912, 913 (5th Cir. 1981)).

if th[e] difference allows the defendant to be convicted of a separate crime from the one for which we was indicted. Otherwise, he will have to show how the variance in the language between the jury charge and the indictment so severely prejudiced his defense that it requires reversal under harmless error review."[8]

Aguilar argues that the court's instruction, particularly the part stating that an officer "may not use force to punish, retaliate or seek retribution against a person who has been arrested," broadened the theory of liability beyond the Fourth Amendment to include liability under the Eighth and Fourteenth Amendments. We are not persuaded.

In Graham, the Supreme Court held that "all claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."[9] The Court explained that the Eighth and Fourteenth Amendment standards require inquiry into the defendant's subjective intent, whereas the Fourth Amendment standard is objective.[10]

The instruction, read in its entirety, does not support any theory aside from the Fourth Amendment. The instruction repeatedly explains that the relevant standard for assessing the Aguilar's use of force was "reasonableness." The jury charge specifically explained that the jury was to "consider all the circumstances of the case from the point of view of an ordinary and reasonable officer on the scene." Nothing in the charge directs the jury to consider Aguilar's subjective intent. The reference to a "person who has been arrested" was a sensible reference to the fact that Jimenez had been handcuffed and placed in

---

[8] Id.

[9] Graham, 490 U.S. at 395.

[10] Id. at 398-99.

a police cruiser prior to the altercation. The district court thus tailored the instruction to reflect the facts alleged in the case.

Finally, we also note that the indictment was read to the jury at the beginning of trial, the jury was instructed to consider only the crime charged in the indictment, and the jury had a copy of the indictment during its deliberations. The occurrence of these factors counsels against concluding there was a constructive amendment.[11]

## C

Aguilar argues that the § 242 jury charge diminished the government's burden of proof on specific intent. "We review de novo whether an instruction misstated an element of a statutory crime."[12]

The court's instruction on the meaning of "willfully" included the following: "You may infer that a person ordinarily intends all the natural and probable consequences of an act knowingly done." Aguilar argues that this is a statement of general intent that diluted the government's burden of proof.

Aguilar's arguments are unavailing. It is true that § 242 requires specific intent.[13] Here, the instruction as a whole properly defined the required intent. We have approved similar instructions in § 242 cases.[14] The instruction's explanation that wilfully "means that the act was done voluntarily and intentionally, and with the specific intent to do something the law forbids; that is, with a bad purpose either to disobey or disregard the law," tracks the language of the Fifth Circuit Pattern Jury Instruction. And, as explained before, this is "consistent with the Supreme Court's teaching that the term willfully in

---

[11] See United States v. Holley, 23 F.3d 902, 912 (5th Cir. 1994).

[12] United States v. Guidry, 406 F.3d 314, 321 (5th Cir. 2005).

[13] See United States v. Screws, 325 U.S. 91 (1945)

[14] See, e.g., United States v. Sipe, 388 F.3d 471, 479-80 & n. 21 (5th Cir. 2004); United States v. Garza, 754 F.2d 1202, 1210 (5th Cir. 1985).

18 U.S.C. § 242 implies conscious purpose to do wrong and intent to deprive another of a right guaranteed by the Constitution, federal statutes, or decisional law."[15]

Nor did the objected to language impermissibly alter the instruction. This Court has upheld specific intent instructions containing such language,[16] explaining that such language "provide[s] for an allowable inference; it [does] not create the prohibited presumption."[17]  The instruction states that specific intent is required in numerous instances, both before and after the objected to language.  Other courts have upheld such language in § 242 cases.[18]

D

Aguilar next contends that the district court committed reversible error by including now-incorrect language from United States v. Arthur Anderson[19] in the jury charge for witness tampering.  Although the parties disagree as to the whether Aguilar objected to the witness tampering charge, or even invited the error, which implicates our standard of review–manifest injustice,[20] plain error,[21] or abuse of discretion[22]–we conclude that this challenge fails under the standard most favoring Aguilar.

---

[15] Garza, 754 F.2d at 1210.

[16] See, e.g., Dupuy v. Cain, 201 F.3d 582, 587-88 (5th Cir. 2000); United States v. Moye, 951 F.2d 59, 62-63 (5th Cir. 1992).

[17] Dupuy, 201 F.3d at 588.

[18] See, e.g., United States v. Myers, 972 F.2d 1566, 1573-74 (11th Cir. 1992).

[19] 374 F.3d 281 (5th Cir. 2004).

[20] See United States v. Green, 272 F.3d 748, 754 (5th Cir. 2001).

[21] See United States v. Hickman, 331 F.3d 439, 443 (5th Cir. 2003).

[22] See Ibarra-Zelaya, 465 F.3d at 607.

Aguilar proposed a jury instruction defining "corruptly persuades" in § 1512(b)(1) that mirrored the instruction in Arthur Anderson, and the district court's final charge followed Arthur Anderson. Aguilar now argues that the Supreme Court's decision in Arthur Anderson v. United States,[23] which disapproved the definition of "corruptly persuades" used here, requires vacating his § 1512(b)(1) conviction.

Section 1512(b)(1) provides that anyone who "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . influence, delay, or prevent the testimony of any person in an official proceeding" has committed a crime. In Arthur Anderson, the trial court's instructions defined "corruptly" as "having an improper purpose," and further defined "improper purpose" as "an intent to subvert, undermine, or impede the fact-finding ability of an official proceeding."[24] The Supreme Court reversed, concluding that the instruction could criminalize innocent conduct.[25]

The government argues that Arthur Anderson is distinguishable, and we agree. The Supreme Court was concerned in Arthur Anderson because "'persuad[ing]' a person 'with the intent to . . . cause' that person to 'withhold' testimony or documents from a Government proceeding or . . . official is not inherently malign."[26] Under the trial court's charge "[n]o longer was any type of 'dishonest[y]' necessary to a finding of guilt, and it was enough for petitioner

---

[23] 544 U.S. 696 (2005).

[24] Arthur Anderson, 374 F.3d at 293.

[25] See Arthur Anderson, 544 U.S. at 706-07.

[26] Id. at 703-04.

to have simply 'impede[d]' the Government's factfinding ability."[27] This disconnect was made worse by the instruction allowing the jury to find guilt without "any nexus between the 'persua[sion]' to destroy documents and any particular proceeding."[28]

The government argues that it was the intersection of these concerns with the specific defense Arthur Anderson was asserting, that the documents were destroyed pursuant to a legitimate document destruction policy, that rendered the instruction infirm.[29]

Here, in contrast, Aguilar did not attempt to explain how his asking Rios to make false statements could be innocent; rather, Aguilar simply denied trying to persuade Rios to lie. Consequently, the government continues, there is no risk here that the jury convicted Aguilar of innocent conduct; it simply found that he did in fact try to persuade Rios to lie to the grand jury.

The First Circuit similarly distinguished Arthur Anderson in United States v. LeMoure, where the jury instruction lacked "the gloss ('consciousness of wrongdoing') later supplied by Arthur Anderson," concluding that "[n]either defendant in this case could conceivably have thought that urging witnesses to lie in official proceedings was lawful."[30] As the Court's concerns in Arthur Anderson were not implicated by the facts of the case, the court found no error.

We are persuaded by the government's and the First Circuit's analysis, and conclude that the instruction here does not run afoul of Arthur Anderson.

E

---

[27] Id. at 706.

[28] Id. at 707.

[29] See United States v. LeMoure, 474 F.3d 37, 42 (1st Cir. 2007).

[30] Id.

Aguilar alleges that the district court precluded him from cross-examining Jimenez on his arrest history or from otherwise bringing up that arrest history in violation of the Confrontation Clause. This court reviews de novo alleged violations of the Confrontation Clause, but any such violations may be harmless.[31] "If there is no Sixth Amendment violation, this court addresses whether the district court abused its discretion by limiting cross-examination."[32] "To demonstrate an abuse of discretion, the defendant must show that the court's limitation on cross-examination was clearly prejudicial."[33]

In assessing whether a Confrontation Clause violation occurred, we consider the importance of the witness to the government's case.[34] Although an important right, "[t]he right to cross examine . . . is not unlimited, but depends on the circumstances of the case."[35] In this case, Jimenez was not a central or key witness for the government; rather, the other officers who witnessed the altercation were the key witnesses, and they testified prior to Jimenez. Also relevant to our inquiry is whether "the jury had sufficient information to appraise the bias and motives of the witness."[36] Here, Aguilar was allowed to question Jimenez about his biases, including his prior conviction for assault of a public officer, the altercation with Aguilar, and his filing of a civil suit against the officers in this case.

---

[31] United States v. Jimenez, 464 F.3d 555, 558 (5th Cir. 2006).

[32] Id. at 558-59.

[33] United States v. Davis, 393 F.3d 540, 548 (5th Cir. 2004).

[34] See Jimenez, 464 F.3d at 559 ("The right to cross-examine 'is particularly important when the witness is critical to the prosecution's case.'" (quoting United States v. Mizell, 88 F.3d 288, 293 (5th Cir. 1996)).

[35] Id.

[36] United States v. Campbell, 49 F.3d 1079, 1085 (5th Cir. 1995).

Nor is United States v. Garza[37] controlling. There, the officers were prosecuted for, inter alia, making false arrests. Garza was "atypical" because the defendants were police officers and several of the witnesses had been arrested by those particular officers. The court held that the witnesses' arrest histories were pertinent to assessing their credibility. Garza does not mean that, whenever a defendant is a police officer, a witness's prior arrests are admissible to show bias; rather, the extent of cross-examination "depends on the circumstances of the case."[38] There is no evidence that Jimenez had been previously arrested by Aguilar, and the nature of the claims here differs from those in Garza. Considering the evidence presented of Jimenez's possible biases, the prejudice in Garza is not present here.

We do not find a Confrontation Clause violation here.[39] Nor can we say the district court abused its discretion. Excluding the arrest record evidence was not clearly prejudicial to Aguilar, as he had a sufficient opportunity to explore Jimenez's possible biases.

F

Aguilar next argues that the trial court abused its discretion by excluding certain pieces of evidence. "We review the admission or exclusion of evidence for abuse of discretion."[40] If the trial court did abuse its discretion, harmless error doctrine applies.[41]

---

[37] 754 F.2d 1202 (5th Cir. 1985).

[38] Jimenez, 464 F.3d at 559.

[39] Even assuming there was a violation, it was harmless. Jimenez's testimony was not critical to the government's case; Aguilar was otherwise allowed extensive cross-examination; Jimenez's testimony regarding the fight was cumulative to the other officers' testimony; and, the prosecution's case was, overall, strong. See United States v. Yi, 460 F.3d 623, 634 (5th Cir. 2006).

[40] United States v. Saldana, 427 F.3d 298, 306 (5th Cir. 2005).

[41] Id.

Under Rule 403, a trial court may exclude evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."

Aguilar challenges the exclusion of a photograph of Gilbert Garcia's injuries, evidence that Jimenez used a chair to hit Garcia, and evidence of the possibility of a firearm in the car Jimenez was riding in when he was arrested.

Regarding the evidence of the barroom fight, the district court explained before trial that

> [the jury is] going to hear that [Jimenez] got into a fight at Paisano's Bar. They are going to hear that he got injured during that fight. You're going to be able to ask about the injuries to the fight, how much blood was spilled . . . . [But w]e're not going to get into knives. We're not going to get into chairs. We're not going to get into the bar room brawl, the specifics of it that deeply . . . . I am not trying that assault case.

The court did allow testimony about the fight and how Garcia looked afterwards from three separate witnesses. Considering the danger of confusion of the issues, and potential unfair prejudice from the jury concluding that Jimenez deserved what he got, we cannot say that the court abused its discretion in excluding the photograph of Garcia's injuries or testimony that Jimenez used a chair to hit Garcia.

Nor did the district court abuse its discretion in excluding evidence of a possible firearm in the car in which Jimenez had been riding. As the district court noted, it is unclear how this evidence was even relevant to Aguilar's use of force against Jimenez. Jimenez was handcuffed in the backseat of a police cruiser when Aguilar arrived and when Aguilar took him from the police cruiser; Jimenez did not have access to the other car. Considering the evidence's

minimal relevance and the potential for confusion of the issues, we cannot conclude that the district court abused its discretion.

G

Finally, Aguilar asserts that the trial judge abused his discretion in dismissing a juror without first providing a hearing.[42] We disagree.

It is within the "trial judge's sound discretion to remove a juror whenever the judge becomes convinced that the juror's abilities to perform his duties have become impaired."[43] "Unless the court's removal of the juror has prejudiced the defendant, we will not disturb the court's decision. Moreover, we will find prejudice only 'if the juror was discharged without factual support or for a legally irrelevant reason'"[44]

The district court dismissed a juror who was taking notes in violation of the court's policy. Although the court had not instructed the jurors on that matter, a court security officer had told that juror not to take notes, but the juror had continued to do so.

The reason the juror was dismissed was not as tenuous as Aguilar asserts. It is within the discretion of the trial court whether or not to allow jurors to take notes.[45] The juror here disobeyed an order of the court, albeit an order delivered through the security guard. A juror's refusal to follow the court's order is a serious concern; it is not a legally irrelevant reason for dismissing a juror.[46]

---

[42] See United States v. Fajardo, 787 F.2d 1523, 1525-26 (11th Cir. 1986) (requiring a hearing before dismissing a juror when the reason for dismissal is "less certain or less obvious")

[43] United States v. Huntress, 956 F.2d 1309, 1312 (5th Cir. 1992) (quoting United States v. Dominguez, 615 F.2d 1093, 1095 (5th Cir. 1980)).

[44] United States v. Virgen-Moreno, 265 F.3d 276, 288 (5th Cir. 2001) (citation omitted) (quoting United States v. Leahy, 82 F.3d 624, 628 (5th Cir. 1996)).

[45] United States v. Rhodes, 631 F.2d 43, 45 (5th Cir. 1980).

[46] See, e.g., United States v. Vega, 72 F.3d 507, 512 (7th Cir. 1995) (concluding that a juror's disobeying an instruction of the court is a "legitimate bases for removal").

Finally, this court has declined to adopt a requirement that a trial judge hold a hearing before dismissing jurors. "The district court was not required to conduct an evidentiary hearing, and the scope of the court's investigation is within its sound discretion."[47]

### III

We therefore AFFIRM Aguilar's convictions.

---

[47] Virgen-Moreno, 265 F.3d at 288.